## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSLYVANIA

NAVIGATORS INSURANCE COMPANY

vs.

OASIS ON ESSINGTON LTD D/B/A OASIS
GENTLEMAN'S CLUB, ET AL.

NO.  2:11-CV-07074-CDJ

### ORDER

And now this _____ day of _____, 2013 upon consideration of Defendants'
Motion for Summary Judgment and all responses hereto, it is hereby ORDERED and
DECREED that said Motion for Summary Judgment is GRANTED.  Plaintiff's
Complaint is hereby dismissed with prejudice.  The Defendants shall be entitled to a
defense and indemnification for the underlying matters of Disante, et al. v. Oasis, et al.
PCCP, April Term, 2011, Docket Number 002467 and George Foreacre, et al. v. Oasis,
et al., PCCP, May Term, 2011, Docket Number 002995 with applicable coverage of
$1,000,000.

_____
                                                                                    J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSLYVANIA**

| | |
|---|---|
| **NAVIGATORS INSURANCE COMPANY** | **NO.  2:11-CV-07074-CDJ** |
| **vs.** | |
| **OASIS ON ESSINGTON LTD D/B/A OASIS GENTLEMAN'S CLUB, ET AL.** | |

**DEFENDANTS OASIS ON ESSINGTON D/B/A OASIS GENTLEMAN'S CLUB,
ANTHONY ALBERTO, JOHN PETTIT, BRENDAN DAVIS, CEASAR
GRAMENZI AND EDWIN PADUA'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.  Factual Background

1. Plaintiff, Navigators Insurance Company, (hereinafter referred to as "Navigators") initially filed this Declaratory Judgment matter on November 14, 2011.

2. Plaintiff, Navigators, filed an Amended Complaint for Declaratory Judgment on October 24, 2012 amending the parties that are known to be deceased.  (A true and correct copy of Plaintiff's Amended Complaint is attached hereto as Exhibit "A").

3. This Declaratory Judgment Action was filed in relation to the underlying matters of Alexander A. DiSanti, Esquire, Administrator of the Estate of James Michael Koons, Jr. v. Robert S. Leflar, et al. and George Foreacre and Angela Foreacre v. Oasis on Essington, Ltd., et al. which are consolidated and pending in the Philadelphia Court of Common Pleas.  (A true and correct copy of the underlying Estate of Koons Complaint is attached hereto as Exhibit "B;" a true and correct copy of the underlying Foreacre Complaint is attached hereto as Exhibit "C").

4. The underlying cases were filed as a result of an incident that allegedly occurred between James Koons, George Foreacre and members of the staff from Oasis on Essington Ltd. (herinafter referred to as "Oasis") on October 16, 2009 at or near the Oasis Gentlemen's Club. (*See* Exhibit "B" at averments 24-39; *see* Exhibit "C" at averments 22-40).

5. Plaintiff, Navigators Insurance Company seeks to avoid providing a defense or indemnification to all Defendants despite the fact that Mr. Anthony Alberto and Mr. Robert Leflar paid for several forms of insurance coverage from Plaintiff. (*See* Exhibit "A" at averment 2).

6. The underlying <u>Koons</u> Complaint alleges that Koons and Foreacre were forcibly ejected from Oasis after consuming alcoholic beverages. (*See* Exhibit "B" at averment 28).

7. The underlying personal injury Complaints assert claims against Defendants including negligence, assault and battery, violation of the Dram Shop Act, wrongful death and a survival action. (*See* Exhibit "B" at Counts I-VII and Exhibit "C" at Counts I-VI).

8. Defendants John Pettit, Brendan Davis, Edwin Padua and Timothy Carpenter were security persons employed by Oasis at the time of the incident in question.

9. Defendant, Caesar Gramenzi was a manager at Oasis on Essington at the time of the incident in question.

10. Robert Leflar and Anthony Alberto were owners of the business at issue.

11. Mr. Leflar and his wife Jacqueline Leflar are deceased.

12. Defendants Robert Leflar and Anthony Alberto paid for several forms of insurance coverage from Navigators Insurance Company including Commercial General Liability, Liquor Liability and Assault and Battery coverage. (A true and correct copy of Navigators Specialty Insurance Company policy is attached hereto as Exhibit "D").

## II.   The Claims of Plaintiff Navigators & The Policy at Issue

13. Plaintiff Navigators Insurance Company is seeking to avoid providing a defense or any indemnification for Defendants John Pettit, Brendan Davis, Edwin Padua, Caesar Gramenzi and Timothy Carpenter by alleging that somehow they are not insureds under the policy at issue despite the fact they were all working for Oasis on Essington on the night in question (*See* Exhibit "A" at averments 65-71).

14. Plaintiff alleges in its Complaint that the Defendants that owned Oasis, Anthony Alberto and the Estates of Robert and Jacqueline Leflar are also somehow not entitled to a defense or indemnification under the policy at issue despite the fact that they personally paid for multiple forms of coverage under the policy at issue. (*See* Exhibit "A" at averments 72-75).

15. The Navigators Policy defines the business, "Oasis on Essington LTD t/a Oasis Gentlemen's Club" as a "Corporation" under the policy at issue (*See* Exhibit "C" under Declarations).

16. Navigators Insurance Company is also seeking to limit the insurance coverage available to its insured, Oasis by attempting to utilize an "Assault and Battery" clause under the policy at issue. (*See* Exhibit "A" averments 77-90).

17. Oasis on Essington Ltd., t/a Oasis Gentlemen's Club paid for a policy of insurance with Navigators Specialty Insurance Company which extended from June 10, 2009 to June 10, 2010. (*See* Exhibit "D" at p. 4).

18. The commercial general liability coverage for Defendants includes a policy limit of $1,000,000 per occurrence. (*See* Exhibit "D" at p. 10).

19. The Navigators policy at issue also included Liquor Liability coverage of $1,000,000 and additional coverage for "Assault and Battery" of $100,000 (*See* Exhibit "D" at the Declaration pages).

20. Section II(1)(c) of the Policy provides coverage for Oasis on Essington's members, executive officers as well as managers and employees. (*See* Exhibit "D" Sect. II at p. 21).

21. The underlying Complaints allege that Mr. Alberto and the Leflar's were the "operators" of Oasis at the time of the incident in question (*See* Exhibit "B" at averment 26 and Exhibit "C" at averment 25).

22. The Commercial General Liability Coverage Form states that the policy applies to "bodily injury" and "property damage" only if it is caused by an "occurrence" within the policy period. (*See* Exhibit "D" at p. 13 Section I, paragraphs b1-2).

23. "Bodily injury" is defined in the policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*See* Exhibit "D" at p. 25, Section V, paragraph 3).

24. "Occurrence" is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*See* Exhibit "D", at p. 26, Section V, paragraph 13).

25. Oasis paid for Liquor Liability Coverage on the Navigators policy which provides coverage for "...those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverages." (*See* Exhibit "D" at p. 29, Section 1, paragraph 1a).

26. Defendant Oasis paid for Liquor Liability Coverage in the amount of $1,000,000 aggregate. (*See* Exhibit "D" at pp. 51-53).

27. The Commercial General Liability Coverage does contain an alleged "Assault and Battery Exclusion." However, Defendants also paid for additional "Assault and Battery" coverage under the same policy which was offered to them by Plaintiff. (*See* Exhibit "D" at p. 56).

28. The Navigators policy includes several exclusions regarding coverage which appear in the form of endorsements at the end of the policy (See Exhibit "D").

29. The Assault and Battery exclusion as well as a Liquor Liability exclusion in the Navigators policy at issue states that the coverage does not apply to expected or intended injury, "Bodily injury" "expected or intended from the standpoint of any insured." (*See* Exhibit "D" at p. 56, Section I (a) (1)).

30. The Assault and Battery Exclusion does not address claims for general negligence or injuries as a result of service of alcohol in violation of the Dram Shop Act. (*See* Exhibit "E" at p.56).

31. The Complaints filed by the underlying Plaintiffs both include claims for general negligence along with violations of the Dram Shop Act (*See* Exhibit "B" and "C").

32. In the <u>Estate of Koons</u> Complaint the allegations of general negligence includes;
(a) a failure to restrain Plaintiff Koons without injuring him, (b) using excessive
force against Plaintiff Koons, (c) failing to adequately supervise said agents, (d)
failure to properly train said agents, (e) failure to perform background checks, (f)
permitting Defendant Pettit to remain an employee of Oasis having knowledge
and information about his known violent propensities which would have led a
reasonable employer to conclude that he was not suitable/qualified for the
position and (g) a failure to exercise reasonable care under the circumstances.
(*See* Exhibit "B" at averment 55).

33. In the <u>Foreacre</u> Complaint allegations of general negligence includes; (a) using
excessive and unwarranted force against Plaintiff Foreacre, (b) failing to consider
alternative means and methods to accomplish their goals, (c) failing to follow
existing policies and procedures, (d) failing to adequately supervise their agents,
(e) failure to properly train its agents, (f) failure to provide a safe environment for
Defendants patrons,  (g) permitting persons with violent propensities to serve as
security (h) failing to adopt appropriate protocols for the use of force and (i) a
failure to exercise reasonable care under the circumstances. (*See* Exhibit "C" at
averment 58).

### III.   The Course and Scope of Employment for Security Personnel

34. The Underlying Complaints both claim that all security personnel and the owners were acting within the course and scope of their employment at the time of the incident in question.  (*See* Exhibit "B" at averment 22, 44 & 57 and Exhibit "C" at averments 3, 21, 45 & 57).

35. The determination of whether a person "was acting within the scope of his employment is typically a question for the jury." Fitzgerald v. McCutcheon, 270 Pa. Super. 102, 106; 410 A.2d 1270, 1271 (1979).

36. In Pennsylvania, an employer is responsible for tortious misconduct by an employee that causes harm to a third party, so long as the employee's misconduct occurred in the course of, and within the scope of, his employment. Costa v. Roxborough Memorial Hospital, 708 A.2d 490, 493 (Pa. Super. 1998).

37. Pennsylvania Courts have decided that an assault on another person for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the course and scope of employment. Id. at 493.

38. The Pennsylvania Superior Court has held that, "a company is liable for the actions of its employees when through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, the employee goes beyond the strict line of his duty or authority and inflicts unjustifiable injury to another." Kaminski v. Mydatt Services Inc., 2012 U.S. Dist. LEXIS 79731 (WDPA 2012), *citing* Brennan v. Merchant & Co., 205 Pa. 258, 54 A. 891, 892 (1903).

39. In the case of <u>Orr v. William J. Burns Detective Agency</u>, 337 Pa. 587, 12 A.2d 25 (Pa. 1940), the Pennsylvania Superior Court held that the defendants were potentially liable for their employees when their security guards shot an individual.   Thus, the employees were in the course and scope of their employment in that case.

40. In <u>Kaminski,</u> a security guard that engaged in a physical altercation with a third party that including a choke hold and an assault was acting within the course and scope of his employment because as a security guard his job inevitably includes, "physical confrontations with guests." <u>Kaminski v. Mydatt Services Inc</u>, 2012 U.S. Dist. LEXIS 79731 (WDPA 2012).

41. As a matter of law Defendants John Pettit, Brendan Davis, Edwin Padua, Caesar Gramenzi and Timothy Carpenter are entitled to a defense and indemnification under the Navigator's policy at issue.


**IV.  <u>Liquor Liability Coverage</u>**

42. The Navigators Policy at issue includes $1,000,000 in Liquor Liability coverage that was paid for Defendants.

43. The Underlying Complaint includes claims for violation of the Dram Shop Act via the service of alcohol to Plaintiffs (*See* Exhibit "B" at averments 62-67).

44. The Policy at issue provides coverage under the Liquor Liability portion for injuries which result from the sales, service or furnishing of alcoholic beverages.

45. The Liquor Liability portion of the policy triggers a duty to defend and indemnify Defendants for the case at bar.

## V.   Eroding Assault and Battery Coverage – Public Policy

46. Plaintiff is attempting to limit the coverage available to Defendants by arguing that the only available coverage is the "Assault and Battery" Coverage of $100,000.

47. The separate "Assault and Battery" coverage paid for by Defendants is an eroding policy that is diminished by all legal expenses and fees.  Thus, if the underlying case were to proceed with only "Assault and Battery" coverage, by the time the case is ready for trial there may be virtually no coverage available to Defendants.

48. A promise, or other term of an agreement, is unenforceable on grounds of public policy if legislation provides that it is unenforceable or if the interest in its enforcement is clearly outweighed in the circumstances by a public policy against enforcement of such terms.   Central Dauphin School District v. American Casualty Company, 493 Pa. 254, 258, 426 A.2d 94, 96 (1981).

49. Public policy has been defined as, "The policy of promoting the public welfare and opposing that which is at war with society and in conflict with the moral principles of the period." Donegal Mutual Ins. Co. v. Long, 387 Pa. Super. 574, 54 A.2d 937 (1989).   In order to ascertain the intent of the parties, it is proper to consider the surrounding circumstances of the transaction and to also consider the purpose of the agreement. Id.

50. A limited policy of insurance with an eroding limit often times provides no protection to its insured despite the fact that they paid for the coverage.

## VI. **Duty to Defend v. Duty to Indemnify**

51. There are two different standards regarding a duty to defend verses a duty to indemnify. Although a duty to defend is separate from, and broader than, a duty to indemnify, both duties flow from the determination that the complaint triggers coverage. General Accident Ins. Co. v. Allen, 692 A.2d 1089, 1095 (1997).

52. The duty to defend under an insurance policy is broader than a duty to indemnify, in that the duty to defend is triggered whenever a factual allegation in a complaint may potentially come within the insurance coverage. The language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation (*See* Baumhammers, supra.).

53. In the present case, the underlying Complaints allege injury within the scope of the general liability policy through assertions of negligence and violations of the Dram Shop Act (*See* Exhibit "B" and "C").

54. The underlying facts in the case at bar form a basis for the allegations of negligence and as such, the coverage at this stage should not be limited in anyway, allowing for the full policy limits of the general liability policy with Navigator's Insurance Company. Additionally, in the present matter, the issue of coverage is a fact question inextricably linked to what occurred on the night in question which should be decided at trial in the underlying case.

Respectfully Submitted:

**REILLY, JANICZEK & MCDEVITT, P.C.**

BY: _____/s/_____

Steven P. Cholden, Esquire
Attorney for Defendants, *Oasis on Essington, Ltd. d/b/a Oasis Gentleman's Club, et al., Anthony Alberto, John Pettit, Brendan Davis, Ceasar Gramenzi and Edwin Padua*

Dated: _____6/24/13_____

## TABLE OF CONTENTS

I.      PROCEDURAL HISTORY.................................................................1

II.     STATEMENT OF THE FACTS....................................................2

III.    LEGAL ARGUMENT...............................................................4

        A.   Standard of Review..............................................................4

        B.   The Course and Scope of Employment for Defendants ....................5

        C.   "Assault & Battery" Coverage ...............................................7

        D.   Liquor Liability Coverage ....................................................9

        E.   "Assault and Battery" Eroding Coverage is Against Public Policy .........9

        F.   Duty to Defend vs. Duty to Indemnify......................................11

IV.     CONCLUSION....................................................................14

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

Acceptance Ins. Co. v. Seybert, 2000 PA Super. 207, 757 A.2d 380
(Pa. Super. 2000)..............................................................................8

Alea London Ltd. v. 65 Bog, Inc., Civ. A. No. 05-1046, 2006 WL 1030247, *9
(E.D. Pa. Apr. 19, 2006)......................................................................11

Allstate Ins. Co. v. Brown, 834 F. Supp. 854, 857 (E.D. Pa. 1993)..........................11

Anderson v. Liberty Lobby, Inc., 477, U.S. 242, 249 (1986)...................................4

Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999).........................................4

Brennan v. Merchant & Co., 205 Pa. 258, 54 A. 891, 892 (1903)...........................7

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).............................................4

Central Dauphin School District v. American Casualty Company, 493 Pa. 254, 258,
426 A.2d 94, 96 (1981)......................................................................10

Costa v. Roxborough Memorial Hospital, 708 A.2d 490, 493 (Pa. Super. 1998)............5

Donegal Mut. Ins. Co. v. Baumhammers, 2006 PA Super 32, 893 A.2d 797, 811 (Pa.
Super 2006) (en banc), appeal granted, 589 Pa. 248, 908 A.2d 265
(Pa. Aug 29, 2206).............................................................8, 9, 11, 12, 13

Donegal Mutual Ins. Co. v. Long, 387 Pa. Super. 574, 54 A.2d 937 (1989)................10

Erie Ins. Exch. V. Filder, 2002 PA Super 307, 808 A.2d 587, 590 (Pa. Super 2002)......12

Fitzgerald v. McCutcheon, 270 Pa. Super. 102, 106; 410 A.2d 1270, 1271 (1979).........5

General Accident Ins. Co. v. Allen, 692 A.2d 1089, 1095 (1997)............................11

Guaranty Trust Co. v. New York, 326 U.S. 99, 109 (1945)....................................4

Investors Ins. Co. of America v. Tacony Palmyra Billiard Club,
2008 WL 3540500, *2 (E.D. Pa. 2008)......................................................11

Kaminski v. Mydatt Services Inc, 2012 U.S. Dist. LEXIS 79731 (WDPA 2012)...........6

Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.,
432 F. Supp. 2d 488, 495 (E.D. Pa. 2006)..................................................11

McMillan v. State Mutual Life Insurance Co. of Am., 922 F.2d 1073, 1075
(3rd Cir. 1990)................................................................................13

Mutual Benefit Ins. Co. v. Haver, 555 Pa. 534, 538, 725 A.2d 743, 745 (1999)...........12

Orr v. William J. Burns Detective Agency, 337 Pa. 587, 12 A.2d 25 (Pa. 1940)...........7

Pac. Indem. Co. v. Linn, 766 F.2d 754, 760 (3rd Cir. 1985)...................................13

Philips Petroleum Co. v. Shutts, 472 797, 835 (1985)...........................................4

QBE Ins. Co. v. M&S Landis Corp., t/d/b/a Fat Daddy's, 915 A.2d 1222
(Pa. Super. 2007).......................................................................7, 8, 12, 13

Sanchez by Rivera v. Montanez, 165 Pa. Commw. 381, 645 A.2d 383
(Pa. Commw. 1994)........................................................................6

Sphere Drake, P.L.C. v. 101 Variety, Inc., 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999)......11

Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 305,
469 A.2d 563, 566(1983)...................................................................13

**Rules**                                                               **Pages**

Federal Rule of Civil Procedure 56 (c).........................................................4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSLYVANIA

NAVIGATORS INSURANCE COMPANY

vs.

OASIS ON ESSINGTON LTD D/B/A OASIS
GENTLEMAN'S CLUB, ET AL.

NO.  2:11-CV-07074-CDJ

**DEFENDANTS OASIS ON ESSINGTON D/B/A OASIS GENTLEMAN'S CLUB,
ANTHONY ALBERTO, JOHN PETTIT, BRENDAN DAVIS, CEASAR
GRAMENZI AND EDWIN PADUA'S MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Oasis on Essington, Ltd. d/b/a Oasis Gentleman's Club, et al., Anthony Alberto,

John Pettit, Brendan Davis, Ceasar Gramenzi and Edwin Padua, by and through their

undersigned attorneys, hereby submit the following Memorandum of Law in support of

their Motion for Summary Judgment and aver as follows:

## I.     PROCEDURAL HISTORY

Plaintiff, Navigators Insurance Company, filed it Declaratory Judgment Amended

Complaint on October 24, 2012.   (A true and correct copy of Plaintiff's Amended

Complaint is attached hereto as Exhibit "A").   Plaintiff brings this suit in Federal District

Court based on diversity jurisdiction and cites the Declaratory Judgment Act, 28 U.S.C.S.

§§2201, 2202.

II.    **STATEMENT OF FACTS**

Plaintiff, Navigators Insurance Company seeks a declaration by this Court that it does not owe a defense or indemnification to several named Defendants in the underlying cases including John Pettit, Brendan Davis, Caesar Gramenzi, Edwin Padua, Timothy Carpenter along with Robert Leflar and Anthony Alberto despite the fact that they paid for several forms of insurance coverage.   Plaintiff alleges that they were all somehow not acting within the "course and scope" of their employment at the time of the incident in question (*See* Exhibit "A").       Mr. Pettit, Davis, Padua and Carpenter were security persons employed by Oasis on Essington at the time of the incident in question.   Mr. Gramenzi was a manager and Mr. Leflar and Mr. Alberto were owners of the business at issue.      Mr. Leflar and Jacqueline Leflar are deceased.   Plaintiff's Complaint was amended to reflect their passing.   (*See* Exhibit "A").

Navigators Insurance Company, in the alternative, is seeking to limit the insurance coverage available to its insured, Oasis on Essington, by attempting to utilize an "Assault and Battery" clause under the policy at issue.

Three separate underlying actions were filed in the Philadelphia Court of Common Pleas regarding the incident.    The first, <u>Alexander A. DiSanti, Esquire, Administrator of the Estate of James Michael Koons, Jr. v. Robert S. Leflar, et al.</u>, was filed on April 21, 2011.   (A true and correct copy of the April 21, 2011 Complaint is attached hereto as Exhibit "B").   Additionally, Plaintiffs George Foreacre and Angela Foreacre, brought two separate liquor liability (Dram Shop) actions both captioned <u>George Foreacre and Angela Foreacre v. Oasis on Essington, Ltd., et al.</u> The first, filed

2

May 26, 2011 is a personal injury action asserting violations of the Dram Shop Act. The second was filed as a Writ of Summons on September 29, 2011. (True and correct copies of the May 26, 2011 Complaint and the September 29, 2011 Writ of Summons are attached hereto as Exhibit "C"). These matters were consolidated by Order issued November 2, 2011 and are pending in the Philadelphia Court of Common Pleas.

The underlying cases were filed as a result of an incident that allegedly occurred on October 16, 2009 at or near the Oasis Gentleman's Club. The underlying Complaints allege that James Koons Jr. and George Foreacre were forcibly ejected from Oasis by its security staff after consuming alcoholic beverages (*See* Exhibits "B" & "C"). The allegations in the Complaints include claims that the Plaintiffs were served alcohol while visibly intoxicated in violation of the Dram Shop Act. (*See* Exhibit "B" at averments 62-67). The Complaints further allege that Plaintiff's Koons and Foreacre were involved in an altercation which resulted in an assault by employees from Oasis on Essington including Mr. Leflar inside the club and also in the exterior parking lot area.

The primary issue which will be addressed via the Declaratory Judgment Action at issue is the extent of coverage to be extended by Navigator's Insurance Company to its insured Oasis on Essington, the owners of the business and its employees. Plaintiff is seeking to avoid having to provide a defense or indemnification to its insureds by arguing that the employees working on the night in question were somehow acting outside the "course and scope" of their employment at the time of the incident in question (*See* Exhibit "A"). Plaintiff seeks, in the alternative, to utilize an "Assault and Battery Exclusion" which would restrict the amount of coverage from $1,000,000 to a $100,000 "Assault and Battery" limit in coverage under their insurance policy.

## III.  LEGAL ARGUMENT

### A. Standard of Review

Federal Rule of Civil Procedure provides that a judgment in favor of a motion for summary judgment:

> ... should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  (*See* F.R.C.P. 56(c))

The moving party has the burden of identifying those portions of the record that demonstrates that absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In resolving a motion for summary judgment, the Court must draw all reasonable inferences in the non-movant's favor, Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999), and determine whether "...the evidence is such that a reasonable jury could return a verdict f or the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, the Court must determine whether there are any genuine issues for trial. Id. at 249.

Federal courts should apply state law because "...the outcome of the litigation in federal court should be substantially the same...as if it were tried in a state court." Philips Petroleum Co. v. Shutts, 472 797, 835 (1985); Guaranty Trust Co. v. New York, 326 U.S. 99, 109 (1945).  The Complaints filed against Defendants clearly trigger a duty to defend and indemnify via the General Liability and or Liquor Liability portion of the policy at issue. The application of Pennsylvania law requires that the policy of insurance

must provide coverage in the amount of $1,000,000 to its insured Oasis on Essington and its employees.

### B.  The Course and Scope of Employment for Defendants

The Defendants in the case at bar include the security officers that were employed by Defendant Oasis on Essington (Pettit, Padua, Davis and Carpenter) along with a manager Mr. Gramenzi and the owners Mr. Alberto and Mr. Leflar.  Plaintiff is attempting to avoid providing any coverage for these parties as it is alleged in the Complaint filed by Navigators that all Defendants were acting outside the course and scope of their employment when the incident in question occurred.  The policy at issue clearly contains coverage which applies to the facts alleged in the underlying Complaints. The definitional section of the policy at issue includes coverage for managers and the owners at issue.  (*See* Exhibit "D" at p.21).   It is alleged in the underlying Complaints that Defendants were acting within the course and scope of their employment at the time of the incident in question. (*See* Exhibit "B" at averment 22, 44 & 57 and Exhibit "C" at averments 21 and 45 & 57).

The determination of whether a person "was acting within the scope of his employment is typically a question for the jury." Fitzgerald v. McCutcheon, 270 Pa. Super. 102, 106; 410 A.2d 1270, 1271 (1979).  However, there are two exceptions to this rule: (1) the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason; or (2) the employee commits an assault upon another for personal reasons or in an outrageous manner. Costa v. Roxborough Memorial Hospital, 708 A.2d 490 (Pa. Super. 1998).  In Pennsylvania, an

employer is responsible for tortious misconduct by an employee that causes harm to a third party, so long as the employee's misconduct occurred in the course of, and within the scope of, his employment Id. at 493.

In the case of Kaminski, the Court recently applied the rules above and determined that a security guard who engaged in a physical altercation with a third party was acting within the course and scope of his employment Kaminski v. Mydatt Services Inc., 2012 U.S. Dist. LEXIS 79731 (WDPA 2012). In that case the assault consisted of the security guard throwing the individual up against a car, assaulting and choking him, and allegedly causing injuries. The Honorable Arthur J. Schwab from the Western District properly determined that the security officer was acting with in the course and scope of his employment because as a security guard his job inevitably includes, "physical confrontations with guests." Id. at p.8. In that case, as in the case at bar, there was no evidence that an assault was personal in nature or outrageous in manner. The personal reasons exception is meant to cover cases where the employee attacks for personal enjoyment or gain. Sanchez by Rivera v. Montanez, 165 Pa. Commw. 381, 645 A.2d 383 (Pa. Commw. 1994). Thus, in the case at bar, this exception is simply unfounded and as a matter of law all employees of Oasis must be found to be in the course and scope of their employment.

The Pennsylvania Superior Court has held that, "a company is liable for the actions of its employees when through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, the employee goes beyond the strict line of his duty or authority and inflicts unjustifiable injury another." Kaminski v. Mydatt Services Inc., 2012 U.S. Dist. LEXIS 79731

(WDPA 2012), *citing* <u>Brennan v. Merchant & Co.</u>, 205 Pa. 258, 54 A. 891, 892 (1903). In the case of <u>Orr v. William J. Burns Detective Agency</u>, 337 Pa. 587, 12 A.2d 25 (Pa. 1940), the Pennsylvania Superior Court held that the defendants were potentially liable for their employees when their security guards shot an individual.  Thus, the employees were in the course and scope of their employment in that case.

The alleged "bodily injury" exclusion referred to in Plaintiff's Complaint also states, "This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property. (*See* Exhibit "E" at p.14) Thus, it is clear that the alleged exclusionary language is not applicable based upon the clear case law that establishes the standards for security personnel in a setting such as a bar or night club. Physical altercations are unfortunately part of the job responsibilities for a security staff. Therefore, as a matter of law and in accordance with the underlying Complaints, Plaintiff must provide a defense and indemnification to Defendants for the incident in question.

### C. <u>"Assault & Battery" Coverage</u>

Plaintiff Navigator's Insurance Company is also seeking to avoid providing a defense and indemnification to Defendants by stating that the policy at issue precludes coverage for an assault and battery.  The case which is directly on point is <u>QBE Ins. Co. v. M&S Landis Corp., t/d/b/a Fat Daddy's</u>, 915 A.2d 1222 (Pa. Super. 2007).  In that case it was alleged that the bouncers from the club restrained the claimant in a manner that eventually led to his death. <u>Id.</u> at 1224.  There, the negligence and carelessness was alleged to have consisted of improperly restraining the claimant, failing to obtain proper training, failing to properly and adequately supervise staff regarding eviction and failing

7

to properly and adequately staff the nightclub, among other claims. Id. at 1227.  The
Court turned to Donegal Mut. Ins. Co. v. Baumhammers in concluding that despite
intentional conduct being the most immediate cause of the claimant's death, the alleged
negligence was, "no less negligence because it is alleged to have led to… intentional
acts."  QBE Ins. Co., *supra citing* Baumhammers, 2006 PA Super 32, 893 A.2d 797, 811
(Pa. Super 2006)(en banc), *appeal granted*, 589 Pa. 248, 908 A.2d 265 (Pa. Aug 29,
2206).

        The Court in QBE Ins. Co. distinguished that matter from Acceptance Ins. Co. v.
Seybert, 2000 PA Super. 207, 757 A.2d 380 (Pa. Super. 2000) (holding that the "assault
and battery" exclusion applied where complaint alleged only assault and battery and had
no suggestion that the injuries were an accident or were negligently caused directly by the
bar employees), based on the litany of allegations of negligence, including against the
employees directly. Id. at 1229.  The Superior Court in that case held that an "assault and
battery" exclusion, which virtually mirrors the exclusion in the case at bar, did not apply
because Fat Daddy's negligence in that case led directly to the victims death.  Id.

        In the case at bar, it is alleged that the security staff members from Oasis were
involved in a physical altercation with the claimants that led to personal injuries.
Claimants in the underlying matters brought causes of action based in negligence against
Oasis and the employees personally.  Allegations of negligence include failure to restrain
the decedent without injuring him, failure to adequately supervise, failure to adequately
train, failure to establish continuing performance standards, and failure to exercise
reasonable care under the circumstances (*See* Exhibits "B" and "C").   Like the QBE
matter, negligence allegations are prevalent and despite allegations of intentional actions,

the general liability portion of the underlying insurance policy remains in effect.   Thus, as a matter of law, it is clear that the general liability portion of the policy at issue is triggered in this case.

### D.  Liquor Liability Coverage

The Navigators Policy at issue includes $1,000,000 in Liquor Liability coverage that was paid for Defendants.  The Underlying Complaint include claims for violation of the Dram Shop Act via the service of alcohol to Plaintiffs (*See* Exhibit "B" at averments 62-67).   The Policy at issue provides coverage under the Liquor Liability portion for injuries which result from the sales, service or furnishing of alcoholic beverages.   The Liquor Liability portion of the policy triggers a duty to defend and indemnify Defendants for the case at bar.

### E.   "Assault and Battery" Eroding Coverage is Against Public Policy

The Navigators Insurance Policy at issue contains coverage for assault and battery claims.  However, the coverage at issue is an eroding policy, or what has been described as a "defense within limits" provision of insurance, that is diminished by legal expenses and fees incurred as a result of defending an action.  In the case at bar, Defendant Oasis on Essington has an eroding policy of $100,000 for "Assault and Battery" Coverage. This form of limited coverage for Defendants is clearly against Pennsylvania public policy.  If the underlying cases were to move forward and Defendants were only covered by an eroding $100,000 policy of insurance it is clear that they would be forced to try and

immediately settle the case, or, if they become involved in protracted litigation that policy would be exhausted.

A promise, or other term of an agreement, is unenforceable on grounds of public policy if legislation provides that it is unenforceable or if the interest in its enforcement is clearly outweighed in the circumstances by a public policy against enforcement of such terms. Central Dauphin School District v. American Casualty Company, 493 Pa. 254, 258, 426 A.2d 94, 96 (1981). At the time of the incident in question no legislative act made the Navigators eroding policy unenforceable. Thus, this Court must consider whether the enforceability of the eroding policy at issue is outweighed by public policy against the enforcement of such a clause.

In the Commonwealth of Pennsylvania, Courts have rarely defined, "public policy." However, it has been defined as, "the policy of promoting the public welfare and opposing that which is at war with society and in conflict with the moral principles of the period." Donegal Mutual Ins. Co. v. Long, 387 Pa. Super. 574, 54 A.2d 937 (1989). In order to ascertain the intent of the parties, it is proper to consider the surrounding circumstances of the transaction and to also consider the purpose of the agreement. Id. In the Donegal case, the Pennsylvania Superior Court concluded that a clause in a rental agreement for a motor vehicle that excludes coverage if the operator/insured is intoxicated is against public policy. Thus, as a matter of law the concept of an eroding policy is against public policy thereby requiring coverage of $1,000,000 to be applicable to the underlying claims.

10

**F.  Duty to Defend vs. Duty to Indemnify**

There are two different standards regarding a duty to defend verses a duty to indemnify.  Although a duty to defend is separate from, and broader than a duty to indemnify, both duties flow from the determination that the complaint triggers coverage. General Accident Ins. Co. v. Allen, 692 A.2d 1089, 1095 (1997).   If an allegation within the third party's complaint potentially triggers coverage under the insurance policy, the insurer will be charged with the duty to defend against the entire action. *See* Alea London Ltd. v. 65 Bog, Inc., Civ. A. No. 05-1046, 2006 WL 1030247, *9 (E.D. Pa. Apr. 19, 2006) *citing* Sphere Drake, P.L.C. v. 101 Variety, Inc., 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999).  A duty to defend contains a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy.  General Accident, 692 A.2d at 1095.

Courts have generally employed a two-step analysis to determine if any portion of an underlying case trigger's coverage.  The first step requires the underlying complainant or insured to show that a portion of the claim "falls squarely within the policy's coverage." Investors Ins. Co. of America v. Tacony Palmyra Billiard Club, 2008 WL 3540500, *2 (E.D. Pa. 2008) *citing* Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co., 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006).  If the insured satisfies its initial burden, "the next analytical step is to determine whether coverage is nonetheless excluded by a policy provision." Alea London Ltd., 2006 WL 1030247 at *5.  At this step, it is the insurer who bears the "burden of demonstrating the applicability of a policy exclusion." Tacony Palmyra Billiard, 2008 WL 3540500 at *2 *citing* Allstate Ins. Co. v. Brown, 834 F. Supp. 854, 857 (E.D. Pa. 1993).  A carrier's duty to defend and indemnify an insured in a suit

11

brought by a third party depends upon a determination of whether the underlying

Complaint triggers coverage. <u>Mutual Benefit Ins. Co. v. Haver</u>, 555 Pa. 534, 538, 725

A.2d 743, 745 (1999).

The duty to defend under an insurance policy is broader than a duty to indemnify,

in that the duty to defend is triggered whenever a factual allegation in a complaint may

potentially come within the insurance coverage.  The language of the policy and the

allegations of the complaint must be construed together to determine the insurers'

obligation *See* <u>Baumhammers</u>, *supra*.    Additionally, the insurer's obligation to defend

an action against an insured, "is fixed solely by the allegations in the underlying

complaint.  As long as a complaint alleges an injury which may be within the scope of the

policy, the insurer must defend its insured until the claim is confined to a recovery the

policy does not cover." <u>Erie Ins. Exch. V. Filder</u>, 2002 PA Super 307, 808 A.2d 587, 590

(Pa. Super 2002).

In the present case, the underlying Complaints allege injury within the scope of

the general liability policy through assertions of negligence.  The facts form a basis for

the negligence allegations and as such, the coverage at this stage should not be limited in

any way, allowing for the full policy limits of the general liability policy with

Navigator's Insurance Company.  Additionally, in the present matter, the issue of

coverage is a fact question regarding what occurred on the night in question which should

be decided in connection with the facts of the underlying cases at trial.  The events of the

night in question as defined in Plaintiff's underlying Complaints will be vehemently

disputed at the time of trial in the underlying case.

The clear unambiguous terms of an insurance policy are construed according to their plain and ordinary meaning. Pac. Indem. Co. v. Linn, 766 F.2d 754, 760 (3rd Cir. 1985). However, where a provision of a contract of insurance is ambiguous, the provision must be construed in favor of the insured, and against the insurer, the drafter of the contract. Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 305, 469 A.2d 563, 566(1983). Thus, any reasonable interpretation offered by the insured must control. McMillan v. State Mutual Life Insurance Co. of Am., 922 F.2d 1073, 1075 (3rd Cir. 1990). Therefore, in the case at bar, the provisions of the Navigators' Insurance policy at issue clearly provides coverage for the underlying Complaints.

Pennsylvania Courts have repeatedly held that alleged negligence leading to intentional acts constitutes an "occurrence" under the general liability insurance policies. See, e.g. Donegal Mut. Ins. Co. v. Baumhammers, 893 A.2d 797, 810 (Pa. Super. 2006) ("[T]he main thrust of our Pennsylvania case law warrants a conclusion, and thus we hold, that negligence leading to intentional acts may nevertheless be considered an 'accident,' and thus an 'occurrence' where so defined."); QBE Ins. Corp. v. M & S Landis Corp., 915 A.2d 1222, 1228 (Pa. Super. 2007) ("despite the intentional conduct that was allegedly the most immediate cause of [the plaintiff's] death, Appellants' alleged negligence, 'no less negligent because it is alleged to have led to ... intentional attacks,' can be considered an "accident" triggering an occurrence under QBE's policy") citing Baumhammers, supra., at 811.

13

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants Oasis on Essington, Ltd. d/b/a Oasis Gentleman's Club, et al., Anthony Alberto, John Pettit, Brendan Davis, Ceasar Gramenzi and Edwin Padua, respectfully request this Honorable Court grant their Motion for Summary Judgment against Plaintiff via the proposed Order attached hereto.

Respectfully Submitted:

**REILLY, JANICZEK & MCDEVITT, P.C.**

BY: _____/s/_____

Steven P. Cholden, Esquire
Attorney for Defendants, *Oasis on Essington, Ltd. d/b/a Oasis Gentleman's Club, et al., Anthony Alberto, John Pettit, Brendan Davis, Ceasar Gramenzi and Edwin Padua*

Dated: ___6/24/13___

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSLYVANIA

NAVIGATORS INSURANCE COMPANY

vs.

OASIS ON ESSINGTON LTD D/B/A OASIS
GENTLEMAN'S CLUB, ET AL.

NO.  2:11-CV-07074-CDJ

### Certificate of Service

I do hereby certify that a true and correct copy of the foregoing Motion for
Summary Judgment was filed with the Court via the Electronic Case Filing System, and
was served on the below listed counsel of record through the same means, unless they are
not registered to receiving filings electronically, in which case service was made by U.S.
Mail, postage pre-paid.

**Counsel for Plaintiff**
Joshua Wall, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103

**REILLY, JANICZEK & MCDEVITT, P.C.**

BY: _____/s/_____
    Steven P. Cholden, Esquire
    Widener Building, Suite 410
    One South Penn Square
    Philadelphia, PA 19107
    (215) 972-5200
    F: (215) 972-0405
    *Attorney for Defendants, Oasis on Essington, Ltd. d/b/a*
    *Oasis Gentleman's Club, et al., Anthony Alberto, John*
    *Pettit, Brendan Davis, Caesar Gramenzi and Edwin Padua*

Dated: __6/24/13_____