## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAVIGATORS INSURANCE COMPANY | : | |
| | : | Civil Action |
| Plaintiff, | : | |
| | : | No. 11-7074 |
| v. | : | |
| | : | |
| OASIS ON ESSINGTON, LTD. d/b/a | : | |
| OASIS GENTLEMAN'S CLUB, *et al.* | : | |
| | : | |
| Defendants. | : | |

### <u>MEMORANDUM</u>

**Jones, II, J.**                                                    **July 31, 2014**

Plaintiff, Navigators Insurance Company ("Navigators"), initiated this declaratory judgment action against Defendants Oasis on Essington Ltd. d/b/a/ Oasis Gentleman's Club ("Oasis"), seeking a declaration that under a policy issued to Oasis for the policy period of June 10, 2009 to June 10, 2010, Oasis and its employees are not entitled to defense nor indemnity in connection with several lawsuits currently pending in the Philadelphia Court of Common Pleas. Presently before the Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 65) Defendant's Cross-Motion for Summary Judgment (Dkt. No. 67) and the responses thereto. For the reasons stated below, Plaintiff's Summary Judgment Motion is granted in part and denied in part. Defendants' Summary Judgment Motion is likewise granted in part and denied in part.

1. **Background**

In this action[1] for declaratory judgment, plaintiff Navigators Insurance Company ("Navigators") seeks a declaration of its rights, duties, and liability pursuant to Policy Number CH08PKG011820-01 ("Policy") issued to defendant Oasis on Essington Ltd. d/b/a Oasis Gentleman's Club ("Oasis") for the policy period June 10, 2009 to June 10, 2010. (Am. Compl. ¶1). Navigators is incorporated in the State of New York, with its principal place of business in New York. (Am. Compl. ¶3). Oasis is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania. (Am. Compl. ¶4).

On October 16, 2009, James Michael Koons, Jr. ("Koons") and George Foreacre ("Foreacre") were patrons of Oasis. (Ex. "A" ¶ 25). After having consumed alcoholic beverages, Koons and Foreacre were ejected from the building and into the parking lot by Oasis' bouncers. (Ex. "A" ¶ 27-28). Once outside, Koons realized that his credit card was still inside the building. (Ex. "A" ¶ 29). However, Defendants Pettit, Davis, Gramenzi, Padua and Carpenter stood in the doorway, blocking re-entry into Oasis. (Ex. "A" ¶ 30). As a result of the ejection, Koons called 911. (Ex. "A" ¶ 31). While Koons was calling 911, Defendant Leflar drove into the parking lot, stopping in close proximity to Koons and Foreacre. (Ex. "A" ¶ 32). Leflar then exited his vehicle and punched Foreacre in the face, causing Foreacre to fall to the ground. (Ex. "A" ¶ 33). With Foreacre on the ground, Defendants Pettit, Davis, Gramenzi, Padua and Carpenter continued the physical altercation with Foreacre, after which they proceeded to do the same to Koons, rendering him unconscious. (Ex. "A" ¶ 33-35). Koons and Foreacre neither provoked nor

---

[1] Plaintiff brings this action as a result of two underlying complaints against the defendants currently pending in the Pennsylvania Court of Common Pleas. In reciting the undisputed facts in the light most favorable to Plaintiff, this Court refers in part to the statements of fact contained in the underlying complaints. This Court's reference to the facts contained within the underlying complaints, however, is solely to provide background on the events leading to the action at hand, and is no way an endorsement nor or ruling on those underlying facts.

physically threatened Mr. Leflar, Pettit, Davis, Gramenzi, Padua or Carpenter. (Ex. "A" ¶ 33, 36). As a result of his injuries, Koons died on November 2, 2009.  (Ex. "A" ¶ 38). Foreacre sustained four transverse fractures of the lumbar spine; a fractured sternum; traumatic injury to the jaw, head, and cervical spine; and other head, neck and back injuries. (Ex. "B" ¶ 38).

Navigators issued to Oasis a commercial general liability policy for the policy period June 10, 2009 to June 10, 2010 ("Policy"). (Ex. "D"). Section II(1)(c) of the Policy provided that those insured under the Policy were: 1) Oasis; 2) Members of Oasis, but only with respect to the conduct of Oasis' business; 3) Managers of Oasis, but only with respect to their duties as managers; and 4) under Section II(2)(a), Employees of Oasis, but only within the scope of their employment with Oasis or while performing duties related to the conduct of Oasis' business. (Ex. "D" p.9). The Policy was subject to a $1,000,000 per occurrence general aggregate limit of liability. (Ex. "D" p.10). In addition to the general aggregate limit of liability, the Policy included bodily injury and property damage liability, subject to the same $1,000,000 limit. (Ex. "D" p.10). The Policy's bodily injury liability provided coverage in the event that an insured became legally obligated to pay compensatory damages as a result of bodily harm. (Ex. "D" p.13). The Policy also provided coverage for compensatory damages an insured would become legally obligated to pay due to injuries resulting from the insured selling, serving or furnishing any alcoholic beverage. (Ex. "D" p.61). However, endorsement NCL 202 10 08, entitled "Exclusion- Assault and Battery" limited the Policy's liability coverage and provided that:

> This insurance does not apply to:
> a.  Expected or Intended Injury
>     1)  "injury" expected or intended from the standpoint of any insured; or
>     2)  "injury" caused by a person other than the insured, which any insured
>         fails to prevent…

(Ex. "D" p.56).

The Policy also contained a limited addition for assault and battery coverage to the Policy's commercial general liability and provided:

1. Insuring Agreement
    a. [Navigators] will pay those sums that the insured becomes legally obligated to pay as compensatory damages (which do not include fines, penalties, sanctions, punitive, exemplary or multiplied portions of damages) because of "bodily injury" included within the "assault and battery hazard" to which this insurance applies. [Navigators] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Navigators does] not have the duty to defend the insured against any "suit" seeking damages for "bodily injury" to which this insurance does not apply…
    b. This insurance applies to "bodily injury" only if:
        1. the "bodily injury" is caused by an "incident" that takes place at a "covered location;" and
        2. the "bodily injury" occurs during the policy period;
    c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

(Ex. "D" p.61, 51-52).

The liability coverage for assault and battery was subject to a $100,000 per incident aggregate limit. (Ex. "D" p.51). The Policy also provided that Navigators' right and duty to defend an insured ends when Navigators has used up the applicable $100,000 limit of insurance in the payment of judgments, settlements or supplementary payments. (Ex. "D" p.51). Included as supplementary payments are Navigators' costs incurred in defense of an insured. (Ex. "D" p.20).

2. **Legal Standard**

The standards by which a court decides a summary judgment motion do not change when the parties file cross-motions. *Hanna v. State Farm Fire & Cas. Co.,* CIV.A.06–3242, 2007 WL 2343778 (E.D.Pa. Aug. 13, 2007); *Southeastern Pa. Transp. Auth. v. Pa. Pub. Util. Comm'n,* 826 F. Supp. 1506, 1512 (E.D.Pa.1993). Under Fed. R. Civ. P. 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file,

4

together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 23. A dispute is genuine if the fact finder could reasonably return a verdict in favor of the non moving party with respect to that issue. *Anderson*, 477 U.S. at 248. In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Seigel Transfer, Inc. v. Carrier Express*, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

**3. Discussion**

The Plaintiff, Navigators has a duty to defend those Defendants who were acting within the scope of their employment, under the Defendant's assault and battery policy. An insurer's duty to defend arises when a complaint might fall under the insured's coverage. *Gedeon v. State Farm Mut. Auto Ins. Co.*, 188 A.2d 320, 321 (Pa. 1963). The duty to indemnify only arises when the insured is found liable for damages that fall within the policy's coverage. *Britamco Underwriters, Inc. v. Stokes*, 881 F. Supp. 196, 198 (E.D.Pa. 1995). In evaluating the duty to defend, the court must confine its examination to the factual allegations in underlying complaint

and the language of the insured's policy.  *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 110 (3d Cir. 2009).

There is no genuine dispute of material fact regarding the content of the insurance policy or the underlying complaints.  The unambiguous language of the Defendants' policy indicates that intentional bodily injury, as alleged in the underlying complaints, is excluded from coverage, except under the supplemental assault and battery policy.  Moreover, the Defendants directly involved in the altercation do not qualify as "insured" under the terms of the policy because they were acting outside the scope of their employment. For the reasons discussed below, the Court grants Plaintiff's Motion for Summary Judgment, in part.

A.  Choice of Law

Navigators asserts that Pennsylvania law applies to this dispute.  Pl.'s Mot. Summ. J. at 11 (citing *Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 688 (3d Cir. 1989)).[2]  The Defendants' do not specifically address the choice of law issue in their cross-motion for summary judgment.  However, the Defendants impliedly agree that Pennsylvania law applies by citing case law from this jurisdiction only.  Defs.' Mot. Summ. J. ¶¶ 34-40, 48-49, 51-52.

The insurance policy issued by Navigators does not contain a choice of law provision.  The "Service of Suit Endorsement" document contained therein merely states that  "[i]t is agreed that in the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the

---

[2] The Supreme Court of Pennsylvania has relied on the Restatement (Second) of Conflict of Laws in evaluating choice of law.  *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 802-03 (Pa. 1964).  The Third Circuit adopted a similar analysis, holding that "[i]n the absence of an effective choice of law by the parties . . . (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties" should all be considered.  *Compagnie des Bauxites de Guinee*, 880 F.2d at 688 (citing Restatement (Second) of Conflict of Laws § 188(2) (1971)).   In this case, the majority of the factors and the relative weight of those factors significantly favor the application of Pennsylvania state law.

Insurer, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America." Pl.'s Mot. Summ. J., Ex. D (Ex. D) at 40. Thus this Court will apply Pennsylvania state law to this dispute.

B.  Duty to Defend and Duty to Indemnify

Navigators has a duty to defend those Defendants who were acting within the scope of their employment, under their supplemental assault and battery policy.  Its duty to indemnify those Defendants depends on the liability incurred once the underlying actions are resolved and the remaining funds left under the assault and battery policy after the expense of defending those actions.

"The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage." *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987). "[A]n insurer is obligated to defend an insured whenever the complaint against its insured potentially may come within the policy's coverage." *First Oak Brook Corp. Syndicate v. Comly Holding Corp.*, 93 F.3d 92, 94-95 (3d Cir. 1996) (citation omitted).  "[T]he insurer has the burden of proving that an exclusion encompasses the underlying action." *Id.* at 95 (citation omitted).

"[A]n insurer's obligation to defend an action against an insured is fixed solely by the allegations in the underlying complaint.  As long as a complaint alleges an injury which may be within the scope of the policy, the insurer must defend its insured until the claim is confined to a recovery the policy does not cover." *QBE Ins. Corp. v. M & S Landis Corp.*, 915 A.2d 1222, 1225 (Pa. Super. Ct. 2007) (citing *Erie Ins. Exch. v. Fidler*, 808 A.2d 587, 590 (Pa. Super. Ct. 2002) (internal quotation marks omitted)).

7

The facts of the underlying complaint control this determination, not the cause of action pled. *QBE Ins. Corp.*, 915 A.2d at 1225 (Pa. Super. Ct. 2007) (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 893 A.2d 797, 811 (Pa. Super. Ct. 2006)). "The factual allegations in the underlying complaint must be taken as true and liberally construed in favor of the insured." *First Mercury Ins. Co. v. Rossi*, No. 10-1097, 2011 U.S. Dist. LEXIS 35845, at *11 (E.D.Pa. 2011)(citation omitted). "[I]t is not appropriate for the Court to conduct an examination of matters outside the four corners of the underlying complaint to determine whether a duty to defend exists." *First Mercury Ins. Co.*, 2011 U.S. Dist. LEXIS 35845, at *20-21 (citation omitted). Therefore, "we must first ascertain the scope of the insurance coverage and then analyze the allegations in the complaint." *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. Ct. 1994) (citations omitted).

      a. <u>The Insurance Policy</u>

"Under Pennsylvania law, insurance contract interpretation, including questions of coverage, is a question of law for the court." *First Mercury Ins. Co.*, 2011 U.S. Dist. LEXIS 35845, at *8-9. "[W]hen construing the language of an insurance policy, [the court's] goal is to ascertain the intent of the parties as manifested by the language of the written instrument." *QBE Ins. Corp.*, 915 A.2d at 1225 (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100 (Pa. 1999)).

"Where . . . the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Id.* Ambiguous language within the policy's provisions is construed against the insurer. *Essex Ins. Co. v. RMJC, Inc.*, 306 Fed.Appx. 749, 751-52 (3d Cir. 2009) (citation omitted). "Contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *QBE Ins. Corp.*, 915 A.2d at

1225 (citing *Madison Constr. Co.*, 735 A.2d 100, 106 (Pa. 1999) (internal quotation marks omitted)).

i.  <u>Scope of Employment</u>

Robert S. Leflar, John Pettit, Brandan Davis, Caesar A. Gramenzi, Edwin Padua, and Timothy Carpenter were not acting within the scope of their employment when they participated in the altercation described in the underlying civil complaints.  Given that this is a threshold issue, this Court grants the Plaintiff's Motion for Summary Judgment with respect to those Defendants.  This issue is not dispositive for the remaining Defendants.

"A master is liable for the acts of his servant which are committed during the course of and within the scope of the servant's employment."  *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979) (citation omitted).  "This liability may extend even to intentional or criminal acts committed by the servant."  *Id.* (citation omitted).

Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct "within the scope of employment."  *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d. 2000) (citations omitted).  Conduct is within the scope of employment if:

> (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpected by the master.

Restatement (Second) Agency § 228(1) (1958).  Additionally, the "conduct must be of the same general nature as that authorized, or incidental to the conduct authorized."  Restatement (Second) Agency § 229(1) (1958).  In determining whether unauthorized conduct was within the scope of employment, a court may consider "the time, place and purpose of the act; . . . whether or not the master has reason to expect that such an act [would] be done; . . . the similarity in quality of the

9

act done to the act authorized; . . . [and] whether or not the act is seriously criminal," among other factors.  Restatement (Second) Agency § 229(2)(j) (1958).

The scope of an individual's employment "is ordinarily a question for the jury," because no "hard and fast rule" is generally applicable to all cases.[3]  *Orr v. William Burns Intern. Detective Agency*, 12 A.2d 25, 27 (Pa. 1940) (internal quotation omitted).  However, "where the facts and the inferences to be drawn from them are not in dispute" a court may decide this issue as a matter of law.  *Id.* (citation omitted).  For example, in *Orr v. William Burns International Detective Agency, et al.*, the plaintiff was shot by an employee of William Burns International Detective Agency, who was assigned to guard property along the Delaware River waterfront during a seaman's strike.  *Id.* at 26.  The employee attempted to detain the plaintiff, but the plaintiff resisted.  *Id.*  In the midst of the struggle, the employee shot the plaintiff.  *Id.*  The defendant employer offered no testimony at trial, and instead relied on the contention that its employee was not acting within the scope of his authority.  *Id.*  On appeal, the Supreme Court of Pennsylvania affirmed judgment for the plaintiff, holding that a jury could have reasonably inferred that the employee was acting within the scope of his authority.  *Id.* at 27.  The employee's "overzealous" response did "not relieve [the] defendant from liability."  *Id.* at 26.

An employer cannot escape liability when its employee does the "very thing that he was authorized and employed to do."  *Pilipovich v. Pittsburgh Coal Co.*, 172 A. 136, 138 (Pa. 1934).  In *Pilipovich v. Pittsburgh Coal Co.*, the plaintiff's husband was shot and killed by an industrial policeman employed by the defendant.  *Id.* at 136.  The industrial policeman was "assigned to

---

[3] A jury question was presented in *Iandiorio v. Kriss & Senko Enterprises, Inc.*  517 A.2d 530, 534 (Pa. 1986).  The plaintiff in that case, a gas station attendant, spilled gasoline on his clothing.  *Id.* at 532.  Despite knowledge of the gasoline on the plaintiff's clothing, an employee of a construction company renovating the gas station lit a cigarette near the plaintiff causing his clothing to ignite, severely injuring the plaintiff.  *Id.*  The Supreme Court of Pennsylvania held that scope of employment was a jury question because the employer dictated where his employees took cigarette breaks.  *Id.* at 534.

the duty of protecting [the] defendant's employees from . . . strikers." *Id.* at 137. The shooting occurred during a confrontation between several industrial policeman and the strikers. *Id.* The Supreme Court of Pennsylvania held that there was "no doubt that . . . [the employee] was within the scope of his employment." *Id.* "He was commissioned as an industrial policeman, he was armed with a deadly weapon, he was authorized to use his authority and the weapon, as occasion might require, for the protection of the interests of the defendant." *Id.*

When an "employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law. If an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing business of the employer and is not done within the scope of employment." *Fitzgerald*, 410 A.2d at 1272. In *Fitzgerald v. McCutcheon*, the Superior Court of Pennsylvania determined that an off-duty police officer, who shot his neighbor during an argument, was not acting within the scope of his employment. *Id.* at 1271. The officer's actions were "motivated by reasons personal to himself and did not further the purpose of his employment as a policeman." *Id.* at 1272. "His act was so outrageous, so criminal and so incapable of anticipation by his employer" that, as a matter of law, it exceeded the scope of his employment. *Id.*

Similarly, in *Howard v. Zaney Bar*, the Supreme Court of Pennsylvania affirmed judgment in favor of an employer because the employee's use of force was outside the scope of his employment. *Howard v. Zaney Bar*, 85 A.2d 401,403 (Pa. 1952). The plaintiff in *Howard* was shot by a bartender after the plaintiff provoked the bartender by making "some passes" at a female patron. *Id.* at 402. While the court recognized that it is the "duty of the owner of a bar or taproom to keep it orderly and reasonably well policed," the bartender's actions were

"unreasonable." *Id.* His conduct was "shocking and a gross abuse of all authority the bartender possessed to maintain order." *Id.* "[T]he act complained of was both willful and separate from duty." *Id.*

Here, the Defendants who participated in the altercation were not acting within the scope of their employment. The Defendants' insurance policy states that Oasis's members are insured only with respect to the conduct of Oasis's business. Ex. D at 21. Oasis's managers are insured only with respect to their duties as managers. *Id.* Oasis's employees are insured only for acts within the scope of their employment. *Id.*

This Court's analysis is limited to the four corners of the underlying complaints. *QBE Ins. Corp.*, 915 A.2d at 1225 (citation omitted). The complaints allege that Robert S. Leflar, Jacqueline Leflar, and Anthony R. Alberto were owners of Oasis on Essington, Ltd. d/b/a Oasis Gentlemen's Club. Pl.'s Mot. Summ. J., Ex. B (Ex. B) ¶¶10-14; Pl.'s Mot. Summ. J., Ex. C (Ex. C) ¶¶ 9-13. John Pettit "was employed as a manager and/or bouncer" at Oasis Gentlemen's Club. Ex. B ¶ 20; Ex. C ¶ 19. Brandan Davis, Caesar A. Gramenzi, Edwin Padua, and Timothy Carpenter "were employed as bouncers" at Oasis Gentlemen's Club. Ex. B ¶ 21, Ex. C ¶ 20. Robert Leflar Investments, LLC was "responsible for the management, operation, and maintenance" of the property where Oasis Gentlemen's Club was located. Ex. B ¶ 9; Ex. C ¶ 8. Robert S. Leflar owned Robert Leflar Investments, LLC. Ex. B ¶ 10, Ex. C ¶ 9. The complaints also allege that Robert S. Leflar, John Pettit, Brandan Davis, Caesar A. Gramenzi, Edwin Padua, and Timothy Carpenter (the assailants) were acting "within the scope of their authority and/or employment" when they beat two patrons after they were escorted from Oasis Gentlemen's Club. Ex. B ¶¶ 22, 28, 35; Ex. C ¶¶ 21, 28, 35.

The underlying complaints do not allege that the assailants were acting in a manner for which they were employed.  Unlike *Orr* or *Pilipovich*, the assailants were not authorized to use extreme force to protect persons or property.  *Orr*, 12 A.2d at 27; *Pilipovich*, 172 A. at 137. Their responsibilities were more akin to the bartender in *Howard*, who was responsible for maintaining order.  *Howard*, 85 A.2d at 402.  While their duties required a general use of force, it did not authorize an unprovoked "malicious, wanton, intentional, and/or reckless" attack, as alleged in the underlying complaints.  Ex. B ¶¶ 33, 43, 49, Ex. C ¶¶ 33, 44, 51.

The altercation took place outside of the club, which is, at most, only tangentially within the employees' "authorized time and space limits."  § 228(1)(b).  As such, the Defendant's cannot reasonably argue that the altercation was actuated to serve their employer.  The Defendants had removed the patrons from the club. Ex. B ¶ 28; Ex. C ¶ 28.  The subsequent altercation did not serve to maintain order within the establishment.

The circumstances of the altercation suggest a personal animus between the parties similar to the motivation recognized in *Fitzgerald*.  *Fitzgerald*, 410 A.2d at 1272.  The underlying complaint indicates that Robert Leflar arrived at the club after the patrons were ejected from the club and assaulted them without provocation.  Ex. B ¶ 33; Ex. C ¶ 31-33.  The other assailants joined him thereafter.  Ex. B ¶ 34; Ex C. ¶ 35.  Although the underlying complaints do not explicitly provide a motivation for the altercation, the Defendants cannot reasonably argue that they were motivated to further their employment by severely beating one patron and causing another's death.  Moreover, they cannot argue that this potentially criminal level of force was expected or anticipated by their employer.

The assailants' conduct here was a "shocking and a gross abuse of all authority." *Howard*, 85 A.2d at 402.  The "act was so outrageous" that, as a matter of law, this Court holds

that Robert S. Leflar, John Pettit, Brandan Davis, Caesar A. Gramenzi, Edwin Padua, and Timothy Carpenter were acting outside the scope of their employment. *Fitzgerald*, 410 A.2d at 1272. Thus, this Court grants the Plaintiff's Motion for Summary Judgment, with respect to those individuals.

ii.  Meaning of "Occurrence"

The altercation detailed in the underlying complaints does not constitute an "occurrence" within the meaning of the Defendants' insurance policy. Thus, the Court grants the Plaintiff's Motion for Summary Judgment regarding coverage for all Defendants under the general commercial liability policy.

The Defendants' general commercial liability policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. D at 26. This identical language has been interpreted numerous times.[4] "[I]n determining the presence of an 'occurrence,' the focus of the inquiry is on whether the underlying injury was caused by an accident." *Nationwide Mut. Fire Ins. Co. of Columbus, Ohio v. Pipher*, No. 96-7462, 1997 U.S. Dist. LEXIS 3284, at *17 (E.D.Pa. 1997) (citations omitted). Such a determination is made by examining the nature of the act which inflicted bodily harm." *Id.* (citation omitted) (internal quotation marks omitted).

A "willful and malicious assault . . . is not an accident but rather is an intentional tort." *Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, 548 A.2d 246, 247 (Pa. 1988). In *Gene's Restaurant, Inc. v. Nationwide Insurance Co.*, an insurer sought to recoup costs it expended in defending a restaurant in a civil suit for assault. *Id.* at 246. The insurer argued that the insured's policy did not provide coverage for such events. *Id.* The Supreme Court of Pennsylvania limited

---

[4] *See* First Mercury Ins. Co., 2011 U.S. Dist. LEXIS 35845, at *2; First Oak Brook Corp. Syndicate v. Ultimate Sports Bar, Inc., No. 94-4395, 1995 U.S. Dist. LEXIS 5490, at *5 (E.D.Pa. 1995).

its analysis to the allegations in the plaintiff's pleadings and the language of the insurance policy. *Id.* at 246-47.  The underlying complaint alleged that "the defendant willfully and maliciously assaulted and beat the . . . plaintiff."  *Id.* at 247.  The restaurant's comprehensive general liability insurance included coverage for "'bodily injury liability' for each 'occurrence.'"  *Id.*  An "occurrence" was limited to unexpected or unintended injuries, from the standpoint of the insured.  *Id.*  Since the alleged injury in the underlying complaint was intentional, the altercation was excluded from coverage and "the insurer owned no duty to defend."  *Id.*

An employer's vicarious liability for the intentional acts of its employees also falls outside of the definition of an "occurrence."  *Stokes*, 881 F. Supp. 196, 200 (E.D.Pa. 1995).  In *Britamco Underwriters, Inc. v. Stokes*, the insurer argued that an underlying complaint's allegation of assault fell outside the policy's coverage.  *Id.* at 197.  Apart from the direct allegations of assault and battery against the employee assailant, the plaintiff in the underlying complaint alleged that the employer was liable under a theory of respondeat superior.  *Id.* at 199. The District Court held that the intentional acts of the employee were not occurrences within the limits of the policy and therefore the insurer was not required to defend the employer against a suit alleging liability stemming from excluded conduct.[5]

In this case, the Defendants' conduct, as alleged in the underlying complaints, does not constitute an "occurrence" under the Defendants' insurance policy.  Just as in *Gene's Restaurant*, the Defendants' actions were allegedly "malicious, wanton, intentional and/or reckless."  Ex. B ¶¶ 43, 49, Ex. C ¶¶ 44,51.  While the underlying complaint also alleges negligence, the factual allegations only support the conclusion that the assailant's actions were intentional.  Ex. B ¶¶ 51-

---

[5] *See infra* section "iv" (discussing the assault and battery exclusion in this case).

57; Ex. C ¶¶ 54-60.   Intentional acts are not considered accidental.  *Gene's Restaurant*, 548 A.2d at 247.  Therefore, the assailant's conduct was not an "occurrence."

The underlying complaints also allege that Oasis Gentlemen's Club, Jacqueline Leflar, Anthony R. Alberto, Robert Leflar Investments, LLC, and Robert Leflar are vicariously liable for their employees' actions during the altercation.  Ex. B ¶¶ 54, 58-61, Ex. ¶¶ 61-65.  But, as in *Stokes*, an insurer has no duty to defend or indemnify an employer in a suit alleging vicarious liability for conduct that is outside of the insurance coverage.  The conduct at issue is excluded from coverage because it does not constitute an occurrence.  Therefore, any vicarious liability resulting from that conduct is also excluded from the policy's coverage.

This Court grants the Plaintiff's Motion for Summary Judgment with respect to the coverage provided by the comprehensive general liability policy for all Defendants.

### iii.  Liquor Liability Coverage

The supplemental liquor liability policy is not implicated by the allegations in the underlying complaints.

The Pennsylvania Dram Shop Act states that it shall be unlawful:

> For any licensee or the board, or any employee, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated . . . .

47 Pa. Cons. Stat. § 4-493 (2012).  In order to establish civil liability for violations of the Dram Shop Act, the violation must be the proximate cause of a plaintiff's injury.  *Fandozzi v. Kelly Hotel, Inc.*, 711 A.2d 524, 525 (Pa. Super. Ct. 1998) (citation omitted).

The Defendant's liquor liability policy provides coverage for liability resulting from "injury" that occurs "by reason of the selling, serving or furnishing of any alcoholic beverage."

16

Ex. D at 29.   While one of the underlying complaints baldly alleges that "[a]s a direct and proximate result of Defendants violations" of the Dram Shop Act the plaintiff suffered injuries, there are no factual allegations to support this claim.  Ex. B ¶ 67.  This Court must confine itself to the four corners of the underlying complaints, which allege injury from the intentional acts of several of the Defendants.   The underlying complaint does not allege any facts to support a relationship between the alleged Dram Shop Act violation and the subsequent injury.

Moreover, the Defendants' comprehensive general liability policy and supplemental liquor liability policy both contain an "Assault and Battery" exclusion, which precludes coverage for "expected or intended" injuries.[6]  Ex. D at 56.

### iv.  Assault and Battery Coverage

The Defendants' commercial general liability policy and liquor liability policy exclude coverage for "expected or intended injury."   Ex. D at 56.  This exclusion applies to "bodily injury" that is "expected or intended from the standpoint of the insured; or . . . caused by a person other than an insured, which any insured fails to prevent."  *Id.*  The Defendants chose to supplement their insurance policy with "limited assault and battery coverage."  *Id.* at 51.  This coverage is subject to a $100,000 limit per "incident" in the aggregate.[7]  *Id.*  Additionally, the amount expended on any defense erodes the total available coverage.  *Id.*  This supplemental insurance applies to "any person or organization qualifying as an insured under the Commercial General Liability" policy.  *Id.* at 52.

The assault and battery exclusion, contained in the general comprehensive liability policy and the liquor liability policy, applies to the altercation at issue in this case.

---

[6] *See infra* section "iv" (discussing assault and battery exclusion).
[7] The Defendants' policy argument regarding the eroding limit under this policy is unconvincing.  Defs.' Mot. Summ. Judgment ¶¶ 46-50.

Artful pleading in the underlying complaint "is not sufficient to avoid a properly executed assault and battery exclusion." *Terra Nova Ins. Co., Ltd. v. Thee Kandy Store, Inc.*, 679 F. Supp. 476, 478 (E.D.Pa. 1988). In *Terra Nova Ins. Co., Ltd. v. Thee Kandy Store, Inc.*, the plaintiff in the underlying complaint alleged only negligence in a suit arising out of an altercation between himself and employees of the insured. *Id.* He alleged that "he was physically beaten and violently assaulted." *Id.* The District Court ruled that "[r]egardless of the language of the allegations, the original cause of harm arose from an alleged assault and battery." *Id.* (citations omitted). Consequently, assault and battery exclusion applied and the insurer had "no obligation to defend or indemnify any of the defendants." *Id.* at 479.

In contrast, allegations of assault or battery and negligence, in the alternative, may not automatically trigger an assault and battery exclusion. *Weiner*, 636 A.2d 649, 652 (Pa. Super. Ct. 1994). The Superior Court of Pennsylvania, in *Britamco Underwriters, Inc. v. Weiner*, held that plausible allegations of accidental injury might fall within a policy's coverage, despite alternative allegations of assault and battery related to the same injury. *Id.* The plaintiff in the underlying complaint alleged that an insured's employee struck him in the neck and "asserted alternative theories of liability sounding in assault and battery . . . and claims of negligence, generally." *Id.* at 650. The underlying complaint specifically characterized the incident as an "accident," at one point. *Id.* at 652. As negligence was not excluded by the policy at issue, the insurer had a duty to defend its insured until the action was limited to a claim that the policy did not cover. *Id.*

Other courts have distinguished the precedent in *Weiner* by noting that the tortious conduct alleged in that case was plausibly characterized as accidental. When the conduct alleged in the underlying complaint is "exclusively intentional," the assault and battery exclusion is

implicated.  *Stokes*, 881 F. Supp. 196, 201 (E.D.Pa. 1995).  In *Britamco Underwriters, Inc. v. Stokes*, a patron alleged "serious and permanent injuries" after he was "violently hit, struck, pushed and thrown" by a bouncer at the insured's establishment.  *Id.* at 199.   The underlying complaint alleged negligence on the part of the employer for failing to train its employees, failing to provide adequate security, and failing to intervene during the altercation.  *Id.*  The District Court held that the assault and battery exclusion was applicable, and the insurer had no duty to defend or indemnify its insured.  *Id.* at 201.

While the underlying complaints, in this case, also include counts of negligence, an insurer's duty to defend is determined by the facts alleged, not the cause of action pled. *Baumhammers.*, 938 A.2d at 290-291.  Looking to the four corners of the underlying complaints, there are no factual allegations that support negligence on the part of the assailants.

The underlying complaints allege that the altercation was unprovoked and intentional. Ex. B ¶ 33; Ex. C ¶ 33.  One of the complaints characterizes the altercation as an "assault."  Ex. B ¶¶ 34, 35.  The other complaint characterizes the altercation as a "beat[ing]."  Ex. C ¶  35. Neither of the underlying complaints alleges accidental contact between the parties.  The alleged injury was both "expected" and "intended from the standpoint of the insured."  Ex. D at 56.  It falls within the exclusion present in both the comprehensive general liability policy and liquor liability policy.

The supplemental assault and battery policy provides coverage for some of the Defendants.  This policy applies to all of those insured under the general comprehensive liability policy.  Ex. D at 52.  Thus, Oasis's members are insured only with respect to the conduct of Oasis's business.  *Id.* at 21. Oasis's managers are insured only with respect to their duties as

managers. *Id.* Oasis's employees are insured only for acts within the scope of their employment. *Id.*

Robert S. Leflar, John Pettit, Brandan Davis, Caesar A. Gramenzi, Edwin Padua, and Timothy Carpenter were acting outside the scope of their employment with respect to this altercation, therefore they are not insured under the supplemental assault and battery policy.[8] The remaining defendants, Oasis Gentlemen's Club, Robert S. Leflar, Jacqueline Leflar, Anthony R. Alberto, and Robert Leflar Investments, LLC, are insured under the supplemental assault and battery policy.

**4.     Conclusion**

The Court grants the Plaintiff's Motion for Summary Judgment with respect to all Defendants under the comprehensive general liability policy and liquor liability policy, which both excluded coverage for intentional acts like those alleged in the underlying complaints. The Court also grants the Plaintiff's Motion for Summary Judgment with respect to the Estate of Robert S. Leflar (as an "employee"), John Pettit, Brandan Davis, Caesar A. Gramenzi, Edwin Padua, and Timothy Carpenter, as they were not insured under the terms of the policy. The Court denies Plaintiff's Motion for Summary Judgment with respect to Oasis Gentlemen's Club, the Estate of Robert S. Leflar (as a "member"), the Estate of Jacqueline Leflar, Anthony R. Alberto, and Robert Leflar Investments, LLC, as they were insured under the supplemental assault and battery policy. That policy is subject to erosion for defense expenses and limited to $100,000.00, per "incident" in the aggregate. The Plaintiff's duty to indemnify depends on the outcome of the underlying action, which has not yet been adjudicated.

---

[8] *See supra* section "i" (discussing scope of employment).